# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| |
|---|
| UNITED STATES OF AMERICA, |
| *Plaintiff,* |
| v. |
| RASHAUD JONES, |
| *Defendant.* |

No. 3:13-cr-00002 (MPS)

## RULING ON MOTION FOR COMPASSIONATE RELEASE

Defendant Rashaud Jones, who is serving a sentence of imprisonment at Elkton Federal Correctional Institution in Ohio, has filed a motion under 18 U.S.C. § 3582(c)(1)(A) for a reduction in his term of imprisonment and immediate release from custody due to the dangers posed by the COVID-19 virus. (ECF No. 424.) The government filed a memorandum in opposition (ECF No. 437), to which Jones filed a reply brief (ECF No. 438). For the reasons that follow, Jones's motion is denied.

On January 3, 2013, a Federal Grand Jury returned an eight-count indictment against Jones and two other defendants. (ECF No. 15.) Jones was charged in seven counts: (1) conspiracy to distribute 280 grams or more of cocaine base, (2) possession with intent to distribute 280 grams or more of cocaine base, (3) possession with intent to distribute 500 grams or more of cocaine, (4) possession with intent to distribute, and distribution of, 28 grams or more of cocaine base, (5) unlawful possession of a firearm by a convicted felon, (6) possession of a firearm in furtherance of a narcotics trafficking crime, and (7) unlawful possession of ammunition by a convicted felon. (*Id.*) On March 2, 2015—after two mistrials in April and October of 2014—a jury returned a verdict of guilty on all seven counts against Jones. (ECF No. 268.)

On January 5, 2016, Jones was sentenced to a total term of imprisonment of 211 months and a total term of supervised release of five years. He has served approximately 64 months and his projected date of release is May 20, 2028.[1]

Section 3582(c)(1)(A) authorizes courts to modify terms of imprisonment as follows:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). Because the Sentencing Commission has not updated its policy statement applicable to Section 3582(c)(1)(A), *see* U.S.S.G. § 1B1.13, to take account of the defendant's statutory right to file a motion with the Court after exhausting remedies,[2] I have previously found that the provisions of U.S.S.G. § 1B1.13—though still providing useful guidance—are obsolete, and thus that the statutory language requiring that the sentence reduction be "consistent with applicable policy statements by the Sentencing Commission" is not currently operative. *See United States v. Harding*, 2020 WL 2988955, at *1 (D. Conn. June 4, 2020); *see also United States v. Rodriguez*, 2020 WL 1627331, at *4 (E.D. Pa. April 1, 2020).[3]

---

[1] *Find an Inmate*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc (last visited June 22, 2020).

[2] This right was established by the First Step Act, Pub. L. No. 115-391, enacted in 2018; prior to that, only the Director of the BOP could file a motion under Section 3582(c)(1)(A).

[3] Even if I found that U.S.S.G. § 1B1.13 was operative—and binding due to its incorporation into the statute—it would not affect the outcome here. The policy statement is more restrictive than the statute alone. For example, it requires a finding that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). In addition, the Application Notes might be read to suggest that a defendant such as Jones who seeks release based on medical conditions must demonstrate that he or she not only "suffer[s] from a serious physical or medical condition" but also one "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or

Therefore, I may reduce Jones's term of imprisonment if (1) he has fully exhausted his administrative remedies or 30 days have passed from receipt of his request by the Warden, and (2) I find, after considering the Section 3553(a) factors, that "extraordinary and compelling reasons warrant" a reduction of his term of imprisonment.

Jones argues that exhaustion is not mandatory under Section 3582(c)(1)(A).   I have previously found the statutory exhaustion requirement to be mandatory and not excusable by the Court.  *United States v. Nathaniel Smith*, 2020 WL 1903160 (D. Conn. Apr. 17, 2020).  ECF No. 425-1 at 47.  Although there is much to criticize in the BOP's handling of the compassionate release process, as I have previously detailed, *Martinez-Brooks v. Easter*, 2020 WL 2405350, at *12-13, 24-26 (D. Conn. May 12, 2020), these deficiencies do not constitute grounds for departing from a statutory mandate imposed by Congress.

Alternatively, Jones argues that he has in any case exhausted his administrative remedies. The Government fails to address this argument.  In its 48-page opposition brief, the Government focuses entirely on the merits of Jones's motion, taking no position on whether Jones has exhausted.  The Sixth Circuit has held that the exhaustion requirement in Section 3582(c)(1)(A) is not a jurisdictional rule, but a mandatory claims-processing rule, which "bind[s] the courts only when properly asserted and not forfeited."  *United States v. Alam*, 2020 WL 2845694, at *2 (6th Cir. June 2, 2020).  Although the Second Circuit has not addressed this issue, District Courts in this Circuit have also concluded that the Government can waive exhaustion.  *See, e.g.*, *United States v. Russo*, 2020 WL 1862294, at *4-5 (S.D.N.Y. Apr. 14, 2020) ("The exhaustion requirement in Section 3582(c) is therefore properly understood as a claim-processing rule . . . .

---

she is not expected to recover." U.S.S.G. § 1B1.13, App. Note 1(A)(ii).  Even if Jones's diabetes qualified him for the latter description, he would not qualify for a finding that he was not a danger to the community, for the reasons discussed below.  In any event, as discussed below, the Section 3553(a) factors—which must be considered under both the statute and the Guideline—weigh heavily against the requested reduction in Jones's term of imprisonment.

[O]ne key consequence of the section not being jurisdictional is that the Government can waive the affirmative defense of exhaustion."); *United States v. Gentille*, 2020 WL 1814158, at *3 (S.D.N.Y. Apr. 9, 2020) ("The Court agrees with the Government that § 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional, but rather is a claims-processing rule that the Government can waive by failing to raise an exhaustion argument."); *United States v. Gonzalez*, 2020 WL 2079110, at *7 (D. Conn. Apr. 30, 2020) (indicating that, "if the Government decides to waive any objection to the exhaustion requirements," the Court would rule on the merits of the motion). Moreover, "[i]f the right to assert the defense of failure to exhaust can be waived, it can also be forfeited." *Russo*, 2020 WL 1862294, at *5.[4]   As the Government has not argued that Jones failed to exhaust, even after Jones raised the issue in his motion, I find that the Government has forfeited the exhaustion defense in this case.

As to the merits of Jones's motion, however, I find that he has not shown that there exist "extraordinary and compelling reasons" to warrant a reduction of his term of imprisonment and grant his release.

Jones argues that he is at high risk for serious illness or death from COVID-19 because he suffers from diabetes, obesity, and high blood pressure.  Jones was diagnosed with type 2 diabetes in early 2016.  Medical Records at 38.  Diabetes, including type 2 diabetes, is a CDC risk factor for severe illness from COVID-19.[5]  As of November 20, 2019, Jones was not taking any medication for his diabetes and told his physician that he has been able to control the disease with diet and exercise.  Medical Records at 2.  Other parts of the medical records indicate that Jones's diabetes is "well controlled."  Medical Records at 14.  There is no indication in the

---

[4] While "waiver" and "forfeiture" are sometimes used interchangeable, they are not synonymous.  "[F]orfeiture is the failure to make the timely assertion of a right[;] waiver is the 'intentional abandonment of a known right.'" *Hamer v. Neighborhood Hous. Servs. Of Chicago*, 138 S. Ct. 13, 17 n.1 (2017).
[5] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html

medical records that Jones has suffered serious complications related to diabetes.  On the other hand, Jones's A1C test results have risen in recent months, and are approaching 8%, the level above which diabetes is no longer "well-controlled" and there is a higher risk of developing complications, according to the Mayo Clinic.  *A1C Test*, Mayo Clinic, https://www.mayoclinic.org/tests-procedures/a1c-test/about/pac-20384643 (last visited June 23, 2020); Medical Records at 76 (indicating an A1C of 7.8 as of March 5, 2020).  Jones indicates that this is due to his inability to access the gym at FCI Elkton due to COVID-19 restrictions.  ECF No. 425 at 5-6.  In short, while Jones's diabetes does not appear to be severe, and continues to be controlled without medication for the time being, his diagnosis nonetheless qualifies him as medically vulnerable under the CDC guidelines.

Jones also cites obesity.  While severe obesity is a risk factor under CDC guidelines, the CDC defines severe obesity as a body mass index (BMI) of 40 or above.[6]  Jones's medical records indicate that he does not qualify for this diagnosis.  On November 20, 2019—the latest date for which data are available—Jones weighed 307 pounds.  ECF No. 427 ("Medical Records") at 2.  Jones's height according to these same medical records is between 6'3 and 6'4, *id.* at 2, 19, 31, and not 6' as his brief suggests.  Assuming a height of 6'3, Jones had a BMI of 38.4 in November, which is below the threshold for severe obesity.

Jones also cites high blood pressure.  The CDC lists "serious heart conditions, including heart failure, coronary artery disease, congenital heart disease, cardiomyopathies, and pulmonary hypertension," as risk factors for severe illness from COVID-19.[7]  There is no indication that Jones has any of these conditions.  High blood pressure alone does not qualify as a COVID-19 risk factor.  Moreover, Jones's most recent blood pressure measurement, taken

---

[6] *Id.*
[7] *Id.*

on November 20, 2019, was only slightly above the normal range, and does not qualify as "high blood pressure."  Medical Records at 2 (indicating a blood pressure of 126/74); *High Blood Pressure Symptoms and Causes*, CDC, https://www.cdc.gov/bloodpressure/about.htm (last visited June 23, 2020) (indicating that normal blood pressure is 120/80 or less, prehypertension or elevated blood pressure is 120/80 to 139/80 according to one source and 120/80 to 129/80 according to another, and high blood pressure or hypertension is any blood pressure higher than this).  While Jones had a reading of 141/85 on April 8, 2019, Medical Records at 31, his most recent reading, as noted, fell below the "high blood pressure" or "hypertension" range. In any case, high blood pressure is not a COVID-19 risk factor under the CDC guidelines.

While Jones qualifies as medically vulnerable under the CDC guidelines due to his type 2 diabetes diagnosis, that does not end the inquiry.  Section 3582(c)(1)(A) requires me to consider the factors in 18 U.S.C. § 3553(a) in determining whether extraordinary and compelling reasons warrant a sentence reduction.  Here, the Section 3553(a) factors – especially Jones's history and characteristics, the seriousness of the offense, the need to promote respect for the law, and the need to protect the public—weigh heavily against the requested reduction in Jones's term of imprisonment.  As detailed in the Government's memorandum (ECF No. 437), this was not a routine drug case involving retail sales by a low-level dealer.  Jones was the leader of a large cocaine distribution operation involving at least five persons.  He and his confederates operated out of multiple locations, used multiple vehicles, and purchased product in kilogram quantities; he processed powder cocaine into crack; and he sold product on both a wholesale (for example, to co-defendants Rivera and Tyson) and retail basis.  In running his operation, Jones used shrewd tactics aimed at avoiding police detection and frustrating law enforcement efforts—moving his operation to a new location when a residence near the old one

was searched by police; driving his vehicles in patterns aimed at countering police surveillance; calling 911 when pulled over by the police; and arranging with a local garage to tow a car packed with his drugs and weapons as the police closed in.   Jones was also adept at inducing his confederates and others to assist him with his operations—employing a product "tester" who also served as a lookout; arranging for at least two co-conspirators to drive around selling his product on the street; arranging with his fiancée to pick him up and drive him away when the police stopped his co-conspirators near his apartment; storing drugs and cash at a co-conspirator's residence when he thought the police were focusing on him; and sourcing product from another confederate when he was short.   This was a very serious crime not just because large quantities of drugs, guns, and ammunition were found in Jones's car, but also because he ran a well-organized, carefully managed operation that injected large quantities of drugs into the Hartford community and undoubtedly would have continued to do so had it not been for his arrest.

That Jones's criminal conduct would have continued absent his arrest is also clear from his record.  As the Government notes, before his conviction in this case, Jones sustained five convictions for drug crimes, all of which appear to have involved distribution or possession with intent to distribute and several of which were committed while Jones was on probation. Jones's history shows a steady progression towards higher-stakes and more dangerous criminal conduct, a progression that previous prison sentences and court supervision failed to check. Indeed, Jones was on probation when he committed the offense that led to his conviction in this case.

As I noted at sentencing, I recognize that Jones is a good father, has shown that he can work at lawful employment, and complied with court-imposed conditions of release during the

lengthy period of pretrial supervision in this case.  I also note that defense counsel has filed a reply brief setting forth a series of strict monitoring and search conditions by which Jones has reportedly agreed to be bound if released, and that those conditions would make it somewhat more difficult for him to resume his old ways.   But Jones's assets as a person are eclipsed by the need to reflect the seriousness of the offense, as detailed above, and the need to promote respect for the law in a case involving an offender who has shown contempt for the drug laws and court supervision (except during the period of pretrial supervision in this case).  Jones has served only about one third of the imprisonment portion of his sentence to date, and so releasing him now would undermine those purposes.  And while the restrictive conditions proposed would go some way toward protecting the public and deterring Jones, they would hardly be foolproof, especially for someone like Jones who, as noted, has shown himself adept at recruiting confederates to assist him.  The proposed conditions thus do not eliminate the need to protect the public and to deter Jones—two additional purposes of a criminal sentence set forth in Section 3553(a).

Each motion for "compassionate release" brought under Section 3582(c)(1)(A) is unique, but, in general, when the Section 3553(a) factors weigh heavily against a reduction in the term of imprisonment, it is very difficult for the defendant to satisfy his burden under Section 3582(c)(1)(A).  That is so because the statute expressly requires the Court to consider the Section 3553(a) factors in deciding whether "extraordinary and compelling reasons warrant" the reduction.  18 U.S.C. Sec. 3582(c)(1)(a) ("[T]he court . . . may reduce the term of imprisonment . . . , after considering the factors set forth in Section 3553(a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction . . . .").  The case for release becomes less "extraordinary and compelling" as the

Section 3553(a) factors call more loudly for further incarceration. And where those factors all point directly and unequivocally toward further incarceration, it is the rare defendant whose medical or other circumstances will be dire enough to move the needle all the way to the opposite end of the dial, *i.e.*, so that it points toward "extraordinary and compelling reasons" warranting release. While I have granted one motion under Section 3582(c)(1)(A) where the Section 3553(a) factors weighed significantly against release, *United States v. Acoff*, 2020 WL 2781798, at *3 (D. Conn. May 29, 2020), those factors did not tilt the scale against release as lopsidedly as they do in this case. Like Jones, Acoff had "a substantial criminal record" and "appear[ed] to have spent the bulk of his adult years as a drug dealer." *Id.* But unlike Jones, Acoff did not control a substantial organization that injected large quantities of illegal drugs into the Hartford community; instead, he was essentially a street-level dealer who operated largely on his own. Nor did he possess Jones's leadership abilities or his track record of recruiting others to assist him. Acoff also had served "the bulk" of his sentence, which meant that the sentence had "gone more than half way towards [satisfying] its goals," *id.*; he had only 25 months in prison left to serve. By contrast, Jones has served only about one third of his imprisonment time and has almost 8 years left to serve. *See* https://www.bop.gov/inmateloc (showing release date of 5/20/2028 for Jones). Finally, I found that Acoff's case presented a "close call." 2020 WL 2781798, at *3.

The call is not easy in Jones's case, either, but I find that it must be made against the requested reduction in the term of imprisonment. I do not take lightly the danger that COVID-19 poses to inmates—and especially to medically vulnerable inmates like Jones. Nor do I take lightly the high level of infections at Elkton FCI, which, as defense counsel notes, was specifically called out in the Attorney General's April 3, 2020 memorandum as one of three

facilities at which the BOP needed urgently to maximize its use of its new authority under the CARES Act to place inmates in home confinement.  But when the Section 3553(a) factors are accounted for in this case, even the admittedly increased risk to Jones's health and safety posed by COVID-19 does not move the needle in this case all the way to "extraordinary and compelling reasons" warranting ending his term of imprisonment.  I therefore must deny this motion.

For the foregoing reasons, Jones's motion to reduce sentence (ECF No. 424) is DENIED.


IT IS SO ORDERED.


Dated: Hartford, Connecticut
       June 24, 2020

                                  _____/s/_____
                                  Michael P. Shea, U.S.D.J.